**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

IN THE MATTER OF                          :

JOHN MICHAEL LOHNER WERREN &    :       CASE NO. 05-10644(SEK)
JUDITH GANTENBEIN ROSENAST,
     DEBTORS                      :       CHAPTER 7

------------------------------
"R" BEST PRODUCE, INC.,          :

     PLAINTIFF                     :       ADV. NO. 06-00040

        v.                    :
JUDITH GANTENBEIN ROSENAST,
JOHN MICHAEL LOHNER WERREN,       :
a/k/a John Gantenbein, John
M. Lohner, John Lohner,          :
     DEFENDANTS                    :
------------------------------

<div style="border:1px solid black; display:inline-block;">

**FILED & ENTERED**

**0 1 FEB 2008**

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

</div>



### OPINION AND ORDER

Should we grant Plaintiff's request for entry of judgment summarily denying the dishargeability of a $47,920.90 debt owed by Defendants as per judgment entered by the U.S. District Court for the Southern District of New York that was registered here, pursuant to 11 U.S. C. § 523 (a)(4). For reasons that follow, we deny the motion, as it does not contain admissible evidence showing the defendants engage in conduct proscribed by 11 U.S.C. § 523(a) that warrants excepting this debt from discharge.

### Factual Background

We describe the facts set forth in the motion and oppositions, supplemented by the underlying litigation before the

U.S. District Court for the District of Puerto Rico("District Court") and documents of record in the bankruptcy case filed by Judith Fine Foods International, Inc.,("JFF").

JFF was a corporation engaged in selling wholesale quantities of fresh fruits and vegetables ("produce") in Puerto Rico.  Apparently, it was a closely held corporation, whose principal shareholders and officers were Judith Gantenbein Rosenast and her husband, John Michael Lohner Werren ("the officers").  By the summer of 1995, JFF was in financial distress, attributed to a number of reasons, none of which are relevant here.  When its finances did not improve, JFF ceased operations in July, 2005, after reaching an "agreement with Caribbean Produce Exchange ... to take over [its] obligations with the cruise ships. ... A contract of $155,000 was agreed to with the proceeds going to Judith's Fine Foods."[1]

While these events were unfolding in Puerto Rico, Plaintiff sued JFF and the officers in New York to collect an outstanding balance of $46,907.94 plus interest and other costs, by enforcing the terms of a settlement reached due to its interstate commerce sales of produce covered by "PACA"[2] to JFF.  That Court issued a



---

[1]  See Defendant's opposition to Plaintiff's motion for summary judgment, docket number 49, p.6.

[2]  Perishable Agricultural Commodities Act ("PACA"),11 U.S.C. § 499a. *et seq.* Bartholomew M. Bota, <u>Personal Liability for Corporate Debts: The Reach of the Perishable Agricultural Commodities Act Continues to Expand</u>, 2 Drake J. Agric. L. 339

Temporary Restraining Order ("TRO") in an attempt to secure the *res* of JFF's PACA trust.[3] One of the findings included in that *ex parte* TRO, states:

> It is also clear that defendants, having been in severe financial jeopardy, have violated and continue to violate both (i) their obligations pursuant to a certain Stipulation of Settlement dated June 7, 2005, and (ii) their obligations pursuant to PACA, by having closed their business operations ... and, upon information and belief, by selling and/or relocating their business and personal assets with the intention to hide their assets from their creditors.
>
> Upon information and belief, the said selling of defendants personal assets and business assets had been undertaken without notice and/or payment to plaintiff of the amounts due and owing. **Instead, defendants have heretofore dissipated and presently continue to dissipate and/or relocate their business and personal assets. As a result, it appears that, in violation of Federal law, PACA trust assets are threatened with continuing dissipation.**[4] [Our emphasis.]

Judgment by default in favor of the Plaintiff followed, where the court concluded JFF and its officers were jointly and severally liable for payment of $47,920.90, as they did not comply with the agreement settling the collection suit initiated under PACA



(Winter 1997); Nicole Leonard, <u>The Unsuspecting Fiduciary: The Curious Case of PACA and Personal Liability</u>, 25-4 ABIJ 32 (May 2006); Michael D. Sousa, <u>The Tension Between Bankruptcy Law and the Perishable Agricultural Commodities Act: An Introduction to the Dilemma</u>, 15 J. Bankr. L.& Prac. 6 Art.3 (2007).

[3] See Exhibit 5 to Plaintiff's motion for summary judgment, docket number 40.

[4] <u>Ibid</u>.

3

provisions.[5] This judgment was presented for registration in the District Court, on August 24, 2005. A month and half or so later, JFF and the officers filed voluntary petitions for bankruptcy protection under Chapter 7 of the Code.[6] Both estates in bankruptcy were administered by the same Trustee, who deposited the funds on hand in an underlying litigation pending in the District Court, abandoning all other assets, including JFF's accounts receivables. The unopposed motion for abandonment shows the Trustee abandoned accounts receivables that JFF scheduled at $700,000, inventory valued in schedules at $3,500 and machinery and equipment (an auxiliary electric plant) worth $2,000[7].

While the bankruptcy cases were progressing, multiple entities asserted claims for payment against JFF's PACA trust's assets by lodging a complaint for distribution of the trust's *res* in the District Court. The second amended complaint shows, exclusive of "R" Best Produce, Inc.'s debt, these claims total $110,864. The Trustee deposited $76,304 in that suit, while at the same time abandoning all other JFF estate assets.



---

[5] See Exhibit 3 to the plaintiff's motion for summary judgment, docket entry 40.

[6] All references to "Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.*

[7] See docket entry # 39 filed in In re Judith Fine Food, International, Inc., bankruptcy case number 05-10629(SEK).

Under these circumstances, "R" Best Produce, Inc. ("R") again sued the officers in this court, claiming the debt established by the registered judgment resulted from the officers' defalcation of the PACA trust's assets while acting in their fiduciary capacities, and so may not be discharged in bankruptcy under 11 U.S.C. § 523(a)(4). In addition, "R" asserted the finding contained in the TRO entered by the court in New York and cited above, shows the officers, while acting in their fiduciary capacities, engaged in the serious and faulty acts resulting in the dissipation of the PACA trust's assets. "R" now seeks to have its suit resolved summarily under FRCP and FRBP 56 and 7056.[8]

---

[8] It is well settled that summary judgment is appropriate when:

'the pleadings, depositions,, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' [cit. omitted] To succeed in a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. [cit. omitted] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.[cit. omitted] The Court must review the record and all reasonable inferences in the light most favorable to the party opposing summary judgment. [cit. omitted]

In the context of a summary judgment motion based on the doctrine of collateral estoppel, summary judgment is appropriate when all requirements of both the application of issue preclusion and procedure of



5

**Discussion**

A. *Defalcation Standard*

In 2002, the Court of Appeals for the First Circuit had the opportunity to interpret the exception to discharge due to defalcation while acting in a fiduciary capacity, thereby ending uncertainties surrounding the exception within the circuit.  In re Baylis, 313 F.3d 9, 19 (1st Cir. 2002).  The Court explained that:

> [a] reading of §523 as a whole indicates that most of the exceptions to discharge in bankruptcy are in place for one of two basic reasons. First, bankruptcy may not be used to avoid the payment of certain types of debts, the repayment of which are important for policy reasons. ...The level of fault of the debtor has no bearing on these exceptions; the exception turns on the type of debt.
> ...
>
> The other large category of bankruptcy exceptions relies on fault.  These exceptions define not the type of debt itself, but the type of fault that caused the debt.  Such exceptions include debts generated by: ...'fraud or defalcation while acting in a fiduciary capacity...'. [cit. omitted]
> ...
>
> The structure of 11 U.S.C. § 523 as a whole, then, suggests that for an act to fall under the 'defalcation' exception to discharge, it must be a serious one indeed, and some fault must be involved. The defalcation by a fiduciary, in our view, belongs in this category.
> ...



summary judgment are met. [cit. omitted]
 Ramírez Zayas v. Puerto Rico, 400 F. Supp. 410, 411-12 (D.P.R. 2005).

> To show defalcation, a creditor need not prove that a
> debtor acted knowingly or willfully, in the sense of
> specific intent.  However, a creditor must be able to
> show that a debtor's actions were so egregious that
> they come close to the level that would be required to
> prove fraud, embezzlement or larceny.
> . . .
>
> The mental state required for defalcation is akin to
> the level of recklessness required for scienter.  It is
> more than the mere conscious taking of risk associated
> with the usual torts standard of recklessness. [cit.
> omitted] Instead, defalcation requires something close
> to a showing of extreme recklessness."

In re Baylis at 19-20.

Furthermore, a debtor fiduciary may not escape the consequences of this exception by saying he had no specific intent. We are also told, we must identify the duty involved in evaluating whether there is a defalcation of a fiduciary duty.  In re Baylis at 20.  As long as the trustee is not acting "in his own interest the standard fixed for his behavior is only that of a reasonable degree of care, skill and caution." In re Baylis at 21.

B. *Application of the Defalcation Standard to Facts*

Here, "R" claims that application of the doctrine of nonmutual offensive collateral estoppel[9] forecloses any litigation on the issue of fiduciaries actions and intent resulting in defalcation.[10]  That is to say, the finding by the New York court



---

[9] Ramírez Zayas v. Puerto Rico, 400 F.2d Supp. 410 (D.P.R. 2005).

[10] The motion and oppositions limit the dispute to the controversy discussed above.  Other "certain rules ...about the availability of the exception" are not questioned by the parties.

7

concerning the officers'/fiduciaries' dissipation of assets belonging to the PACA trust contained in its TRO is all that is needed to establish the egregious act and intent required for us to conclude the officers engaged in conduct penalized by the exception "R" invokes.

We disagree for two reasons. First, this finding was the result of an *ex parte* order stating the officers dissipated the PACA Trust assets. The very nature of this swift prejudgment remedy and statements in the order itself, shows it was entered without notice, and before the officers had the opportunity to challenge "R"'s assertions. <u>Fiumara v. Fireman's Fund Ins. Companies</u>, 746 F.2d 87, 92 (1st Cir. 1984). Second, the dissipation referred to in the TRO is not a finding determined by a "valid and binding final judgment or order". <u>González-Pina v. Rodríguez</u>, 407 F. 3d 425, 429 (1st Cir. 2005); <u>Faigin v. Kelly</u>, 184 F.3d 67, 78 (1st Cir. 1999).

Stripped of this finding, "R" cannot prevail, as it does not meet its burden of establishing one of the elements required by the discharge exception it invokes.[11]



---

<u>In re Baylis</u>, 313 F.3d 9, 17 (1st Cir. 2002).

[11] "R" has not produced material, admissible evidence to buttress its assertion that the officers dissipated PACA trust assets with the type of fault required by Code section 523(a)(4). The officers' oppositions to summary judgment show the PACA trust assets were either deposited in the underlying suit in the District court or abandoned by the Trustee in the JFF bankruptcy case.

WHEREFORE, we deny "R"'s motion for summary judgment, ordering the Clerk to schedule the pretrial hearing by entering and notifying our standard order.

**SO ORDERED,** in San Juan, Puerto Rico, February 1, 2008.

SARA DE JESUS
U.S. Bankruptcy Judge

9